[Cite as *In re K.C.M*, 2019-Ohio-5182.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: K.C.M. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| | : | |
| | : | |
| | : | |
| | : | Case No. 2019 CA 00008 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County
Court of Common Pleas, Probate
Division, Case No. PM 20180044

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      December 12, 2019

APPEARANCES:

For Plaintiff-Appellant-Father            For Defendant-Appellee-Mother

JOHN H. COUSINS IV                   TIMOTHY D. GERRITY
Grossman Law Offices                Gerrity & Burrier, Ltd.
32 W. Hoster Street, Suite 100       400 S 5th Street, Suite 302
Columbus, Ohio 43215              Columbus, Ohio 43215

*Baldwin, J.*

{¶1}    Appellant-Father appeals from the February 1, 2019 Entry of the Fairfield County Court of Common Pleas, Probate Division ordering that the name of K.C.M. be changed to K.C.Y.

STATEMENT OF THE FACT AND CASE

{¶2}    Appellant-Father and appellee-Mother are the biological parents of a daughter born on April 1, 2014. The two were never married and the child was given appellee's last name at the time, which was her maiden name. Paternity for the child was established in 2015.

{¶3}    On May 18, 2018, appellee filed an Application to Change the child's name from K.C.M. to K.C.Y. The application stated, in part, that appellee had married and wanted to have her daughter's last name conform to hers. Appellee married her husband on December 30, 2016. After appellant objected, an evidentiary hearing was held on January 25, 2019.

{¶4}    On cross-examination, appellant testified that appellee had been designated the sole residential parent and legal custodian for the child and that he had waived parenting time. He testified that it was his understanding that his parental rights had been eliminated. Appellant, when asked if it would be in the child's best interest to have her name changed to appellee's married name, testified that "[i]f both parents are going to take full responsibility of the child, then, yes, but not just a name change, no." Transcript at 15.  He testified that if appellee and her husband wanted "to assume legal and financial responsibility for [the child], then I'm okay with that, too, because that's an adoption." Transcript at 16.

{¶5}   Appellant admitted that he was obligated to pay child support and to contribute to the child's non-reimbursed medical expenses. He testified that he did not want the child's last name changed to his last name and admitted that he could not refute if it was appellee's understanding that everyone in the community who had contact with the child supported her name change. Appellant testified that the child's school sent him photos of her at school and that the school automatically notified him of her progress.  He never visited her school or spoke with her pediatrician. He testified that he was not actively seeking information about his daughter's well-being.   Appellant testified that it was his daughter's choice to have a relationship with him and that appellee had never expressed that the child had any interest in having a relationship.  He testified that he had never said that he would not be open to having a relationship and that it was the child's choice.

{¶6}   Appellant testified that he had not told his extended family about the child and that his parents and siblings were not aware that he was a father. Appellant, when asked, stated that he did not feel bad that he had never shown any interest in his daughter. The following is an excerpt from appellant's testimony:

{¶7}   Q.  Okay.  [appellant], you oppose the name change from [K.C.M.] to [K.C.Y.] because you believe that that's going to give you leverage to require my client's husband to do a stepfather adoption, correct?

{¶8}   A.  If they want to change the name, yes, I believe the adoption is the correct way to go.

{¶9}   Transcript at 30. He testified that he was happy to continue paying child support if there was no name change. Appellant testified that he had waived parenting

time because he was working two jobs on two continents and did not want to put the child in child care or hire a nanny when appellee and her family were there to support the child.

{¶10} Appellant further testified that he did not think that it was in the child's best interest to take on the name of someone who was not taking on the legal and financial obligations of being her stepfather and that if the child assumed her stepfather's name without him taking legal and financial responsibility for her would be "effectively fooling society that they are a wholesome family unit with two legal guardians" and that it was not in the child's best interest. Transcript at 41. Appellant testified that it was his understanding that if the adoption occurred, his financial obligation would discontinue but that that was not his primary motivation. He testified that allowing the name change as a substitute for an adoption deceived the public. He noted that he had consented to an adoption and that if the name change was allowed, there would be fewer reasons for the adoption.

{¶11} Appellee testified at the hearing that she had raised the child for three and a half years without a husband after the child's birth and that she had been married for two years. She admitted that there had been no interaction between appellant and the child aside from paying child support and that appellant had never requested that the child bear his name. Appellee testified that she had never been contacted by any of appellant's family members and was not aware that appellant had never disclosed the existence of the child to them. She testified that it was sad for the child that she did not have a relationship with them.

{¶12} Appellee was questioned about her relationship with the child. She testified that their relationship was great and that she was a happy child who was going to turn

five in April. Other than appellant, no one had voiced a strong opinion against the name change. Appellee testified that she was active at her daughter's school and that her daughter's surname was listed as appellee's maiden name. Appellee did not encourage her daughter to use her husband's surname and did not believe that it would be appropriate to do so. The child, however, signed appellee's married surname on her papers. After appellee and the child's teacher discussed the matter, the child was still bringing papers home with appellee's married surname.

{¶13} Appellee testified that she was her daughter's favorite person in the world and that the child knew appellant's husband as "Dad". The two, according to appellee, had a great relationship. Appellee testified that she had recently had a baby and that the child and the baby adored one another. When asked, appellee testified that she had never had any conversations with her daughter about appellant's existence and that she did not have any immediate plans to encourage her husband to adopt the child. She testified that she believed that appellant had an ongoing obligation to support his daughter and never thought that appellant would object to the name change.

{¶14} Appellee testified that she thought that it would be confusing to her daughter to have a different name from the rest of the family and that her daughter was not attached to appellee's maiden name. Appellee, when asked if her daughter suffered from embarrassment, discomfort or inconvenience by having a different surname than appellee, testified "Not yet." Transcript at 59.

{¶15} On cross-examination, appellee testified that she was still dating appellant when she told him that she was pregnant and that the two ended their relationship shortly thereafter. They dated for approximately eight months. Appellee testified that appellant

paid child support and had paid a lump sum to liquidate the arrearage incurred from the child's date of birth and that appellant had agreed to pay 80% of all uncovered medical expenses and part of the daycare expenses.   She testified that she was aware that a stepparent adoption extinguished appellant's child support obligation.

**{¶16}** Appellee testified that after she got married, she had changed her last name and that her daughter "was not understanding of a name yet at that time "and doesn't understand maiden name." Transcript at 70. She further testified that her daughter did not understand that appellee's parents and siblings had the last name [M].   Appellee admitted that the fact that her daughter had a different last name than appellee, appellee's husband and appellee's baby was not detrimentally impacting the child's relationship with her school friends. The following is an excerpt from appellee's testimony:

**{¶17}** Q.  If the Court grants your request for a name change on behalf of [the child], is there any reason why you would pursue a stepparent adoption, or why your husband would pursue a stepparent adoption?

**{¶18}** A.  Yes.

**{¶19}** Q.  What?

**{¶20}** A.  When we have the conversation with her, we will allow her to choose if she would like a relationship.

**{¶21}** Q.  Okay.  And you have not yet had that conversation with her?

**{¶22}** A.  We have not.

**{¶23}** Q.  Okay.  So would it be premature to ask the Court to change [the child's] last name?

**{¶24}** A. No.

{¶25} Q. Okay.  Is there any reason why you would pursue a stepparent adoption other than the reason you just testified to?

{¶26} A. I'm sure there are many reasons, but we're just not at that point that I've thought it completely through yet.

{¶27} Q.  Do you believe that this process, this name change litigation, is easier and less costly than an uncontested stepparent adoption?

{¶28} A. No.  I do not.

{¶29} Q. Okay.  So given the fact that you've been married to Mr. [Y] for over two years now, and that [K.C.M.] has had the last name of [M] her entire life, her having the last name [M] has not detrimentally affected your relationship with her, correct?

{¶30} A.  She didn't understand a last name until last year.

{¶31} Q. Okay.  But it hasn't loosened the bond between mother and daughter?

{¶32} A. No.

{¶33} Q. Okay.  And it hasn't loosened the bond between biological father and daughter, correct?

{¶34} A.  There is not relationship, so, no.

{¶35} Q. So it's pretty much the same?

{¶36} A.  Correct.

{¶37} Transcript at 74-75.

{¶38} While appellee admitted that, in her application, she did not indicate that her daughter was experiencing any embarrassment, discomfort or inconvenience by having a different surname than appellee or that it prevented her from being identified as part of the family unit, she testified that it was true "at that time."  Transcript at 77.  She further

testified that she did not indicate that her daughter had expressed any preference one way or the other. When asked, appellee testified that she did not know any children who had a different last name than that of their biological mother or father.

{¶39} Appellee testified that a stepparent adoption would not be in her daughter's best interest "until she wishes to have that." Transcript at 79.  She testified that her daughter was not aware that her stepfather had a legal relationship to her because "[s]he doesn't' understand a legal relationship right now." Transcript at 80. Appellee did not know if she wanted her husband to be legally responsible for appellee's' daughter.

{¶40} On direct examination, appellant testified that at the time appellee became pregnant, appellee was aware that appellant was not interested in having children at that time. He testified that he worked long hours every day and travelled extensively. Appellant, when asked, agreed that he did not have to agree to pay $1,500.00 a month in child support but was willing to be financially responsible for the child. He did not have the time to be a parent and that is why he paid the amount of child support that he did along with daycare and uncovered medical expenses. He further testified that appellee did not tell him in advance that she was getting married and did not talk to him at all about changing their daughter's last name prior to that point.  He stated that he had not had direct contact with his daughter and that appellee had never expressed to him that the child wanted a relationship with him.  He testified that he would consent to an adoption and that he did not know when appellee reached out to him in a January 2018 email that an adoption would extinguish child support but had since become aware. Appellant testified that it was not about child support to him and that "to change the name without the adoption means that the person whose name they're taking is not taking legal and

financial responsibility for the child, and that, I think, is in the best interest. But the name change without that is, by definition, not the best interest, because the best interest is to have two legal parents in the house who are the legal guardians taking financial responsibility for the child. " Transcript at 91.

**{¶41}** Appellant testified that he got married in June of 2017 and that he and his wife were expecting a child. He testified that if the child wanted to be part of his family, they would welcome her "to the extent that she wants to be." Transcript at 93.  He testified that his wife knew about the child. He testified that he and appellee had broken up before he became aware of the pregnancy.

**{¶42}** The trial court, pursuant to a Judgment Entry filed on February 1, 2019, granted the request for a name change, finding that "reasonable and proper cause exists for changing the name of Child and that the name change is in the best interest of the minor."

**{¶43}** Appellant now appeals, raising the following assignment of error on appeal:

**{¶44}** "I. THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST TH MANIFEST WEIGHT OF THE EVIDENCE IN GRANTING MOTHER'S APPLICATION FOR A NAME CHANGE."

I

**{¶45}** Appellant, in his sole assignment of error, argues that the trial court abused its discretion and ruled against the manifest weight of the evidence in granting appellee's request to change the name of the minor child.   We disagree.

**{¶46}** R.C. 2717.01 grants the authority for a probate court to make name changes on behalf of a minor child. The standard for deciding whether to permit a name

change is "proof that * * * the facts set forth in the application show reasonable and proper cause for changing the name of the applicant." R.C. 2717.01(A); *In re Willhite,* 85 Ohio St.3d 29, 1999–Ohio–201, 706 N.E.2d 778. In determining whether a reasonable and proper cause for a name change has been established, a court must consider the best interest of the child. *Id.* A probate court's determination of whether a proposed name change should be granted will only be reversed if it constitutes an abuse of discretion. *Id.* A reviewing court may not substitute its own judgment for that of the trial court. *Id.* An abuse of discretion "connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶47}** In determining the best interest of the child, the trial court should consider the following factors: (1) the effect of the change on the preservation and development of the child's relationship with each parent; (2) the identification of the child as part of a family unit; (3) the length of time that the child has been using a surname; (4) the preference of the child if the child is of sufficient maturity to express a meaningful preference; (5) whether the child's surname is different from the surname of the child's residential parent; (6) the embarrassment, discomfort, or inconvenience that may result when a child bears a surname different from the residential parent's; (7) parental failure to maintain contact with and support of the child; and (8) any other factor relevant to the child's best interest. *In re Willhite,* 85 Ohio St.3d 28, 1999–Ohio–201, 706 N.E.2d 778.

**{¶48}** If the probate court has considered the appropriate factors, we will not substitute our judgment for its judgment absent an abuse of discretion. *Id.* In this case, the trial court held an evidentiary hearing and conducted a review of the application

following appellant's objection. The trial court stated that it had considered all of the factors in *Willhite* and determined that it was in the best interest of the child to change her surname.

{¶49} Upon review of the record, we find the trial court duly considered the relevant factors, and there was evidence presented to support the trial court's determination such that the trial court's decision was not unreasonable, arbitrary, or unconscionable.

{¶50} The trial court, in its Entry, made detailed findings of fact. Among other findings, the trial court found that the child's relationship with appellee would be enhanced by the child having the same surname as her mother, with whom she was bonded, while appellant's relationship with the child would not be negatively impacted since he had no contact with her. The trial court also found that the child associated with appellee, her husband and the child's little sister all who had the same last name and that appellant "is not the family unit for the Child." The trial court noted that the child had been writing appellee's married surname on her papers at school and identified as part of appellee's family unit.  The trial court also found that the child had never used appellant's surname and would experience discomfort, embarrassment of inconvenience if she was no longer allowed to use such surname on her school papers since she associated it with her family unit.  With respect to appellant, the trial court noted that he had chosen to have no relationship with the child and did not want her to have his last name whereas appellee was bonded to her and was his sole caregiver.

{¶51} Upon our review, we find that the trial court did not abuse its decision because its decision was not unreasonable, arbitrary, or unconscionable but rather was

thoughtfully made. Because this court finds that there is some competent and credible evidence that supports the probate court's judgments below, we also will not reverse said judgments as being against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Constr. Co.* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶52}** Appellant's sole assignment of error is, therefore, overruled.

**{¶53}** Accordingly, the judgment of the Fairfield County Court of Common Pleas, Probate Division ordering that the name of K.C.M. be changed to K.C.Y. is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, Earle, J. concur.